Jones *v*. Standard Oil Company of Louisiana.

Opinion delivered June 21, 1920.

1. Master and servant—use of defective oil tank car.—A master is not liable to a servant for the defective condition of an oil tank car where the master made no use of the car except to unload it when received upon a siding, especially where the injured servant was the only representative of the master at the place of unloading.

2. Master and servant—inspection of oil tank car.—An oil company did not owe to its servant the duty to inspect a tank car re-

ceived upon a siding to be unloaded, as it is not ordinarily possible for the consignee of commodities shipped in such cars to make any inspection of them.

Appeal from White Circuit Court; *J. M. Johnson,* Judge; affirmed.

*John E. Miller* and *C. E. Yingling,* for appellant.

1. The court erred in peremptorily instructing a verdict for defendant, as a case for a jury was made by the evidence of negligence of defendant company, its servants, agents and employees, for which appellee company was liable.

2. The relation of master and servant was shown to exist between plaintiff and defendant, and the injury was caused by defective spring on the valve rod, and that this defect and others could have been discovered by an inspection of the car at the time, or prior to the time, the car was filled with gasoline. The evidence shows that defendant did not discharge its duty toward plaintiff, and that he was injured by reason of its failure to discharge its duty in using ordinary care to furnish him a safe place in which to work and to make reasonable inspection of the appliances and instrumentalities furnished with which he was required to work. 117 Ark. 204; 123 *Id.* 119; 116 *Id.* 277; 133 *Id.* 340. Plaintiff made such inspection of the car as he was by law required to make on its arrival at Searcy, as the evidence shows. 99 **Ark.** 265. The defect was hidden, and the testimony shows that plaintiff did all required of him under the circumstances of his employment. He was not an inspector of cars before they were loaded with gasoline. 93 Ark. 564-9; 121 *Id.* 507-12

3. The ordinary rules of master and servant applied here, and defendant was under obligation to inspect this car for defects, even if it was owned by a company in Oklahoma. 53 Ark. 347; 70 *Id.* 299; 78 *Id.* 510; 18 R. C. L., § 93, p. 590; 99 Ark. 277; 72 N. E. 331; 89 Am. St. Rep. 456; 3 Labatt on M. & S. (2 ed.), § 2893, p. 2893. The company owed the plaintiff the duty to in-

spect the car and see that it was in good repair and that no defect existed that could have been discovered by a careful inspection at the time the gasoline was loaded in the car. The servants of the Midland Petroleum Company, if they in fact loaded the car, were the agents of defendant for the inspection of the car. The defendant owed the plaintiff the duty to inspect, and it was a nondelegable duty, and under our law defendant can not be shielded from liability. 87 Ark. 321; 98 *Id.* 34; 111 *Id.* 5.

*Reid, Burrow & McDonnell,* for appellee.

1. Consignees were not liable to servants for injuries received due to defects in car. There was no negligence in defendant in not inspecting the car at the time it was loaded. Defendant was not the owner of the car, nor did it load it. The car was neither a tool, appliance or instrumentality furnished by the master, and there was no liability, and a directed verdict was proper. 74 N. E. 337; 75 *Id.* 75; 23 L. R. A. 448; 20 Atl. 981; 25 *Id.* 587. Defendant did not own the car; it belonged to the railroad company. 25 Atl. 587. See, also, 38 N. E. 324; 39 *Id.* 147; 14 L. R. A. (N. S.) 972; 83 N. E. 626; 27 Atl. 1043; 45 N. E. 1084; 30 Atl. 356; 3 Labatt, M. & S., p. 2831, note 6. A master is not liable for defects in appliances furnished by or under the control of third parties. 26 Cyc. 1109; 47 N. E. 425.

2. The scope of ways, work and machinery is restricted to things over which the master has control or right to select. 35 N. E. 547; 60 *Id.* 484.

3. Master must be charged with sufficient notice and opportunity to repair defects which are not shown to be structural defects. 46 Ark. 565; 96 S. W. 183; 78 *Id.* 220; 175 *Id.* 1177; 48 Pac. 12, 963; 57 *Id.* 973; 68 *Id.* 609; 86 Ill. App. 454; 31 S. W. 347; 79 *Id.* 973; 51 L. R. A. 881. The burden is on the servant to establish the requisite knowledge for the reason that it is one of the essential elements of negligence. Labatt on M. & S., p. 2724.

4. No negligence imputable where a defect is not discoverable by a reasonable, careful inspection. Labatt on M. & S. 2724-5. Master not liable for hidden defects which could not have been discovered by careful inspection. 20 Am. Rep. 331; 68 Ill. 561; 102 C. C. A. 579; 179 Fed. 433; 70 S. E. 742; 132 Fed. 801; 152 *Id.* 417; 89 S. W. 502; Labatt on M. & S., p. 2710; 17 N. W. 151; 40 N. E. 818.

5. A master is not required to exhaustive care in the examination of machinery which is incompatible with the proper furtherance of business. Labatt on M. &. S., p. 2818.

6. Common usage is the test of adequacy of inspection. Labatt on M. & S., p. 2821; 166 U. S. 617; 58 Ark. 125.

7. In no view of the proof could a recovery be had here, and a verdict was properly directed.

SMITH, J. This is a suit by appellant, who was plaintiff below and who will hereinafter be referred to as plaintiff, to recover damages alleged to have been sustained on account of the negligence of appellee, the Standard Oil Co. of Louisiana, which will hereinafter be referred to as the company. The case was tried before a jury, and at the conclusion of the testimony offered on plaintiff's behalf the jury, under the direction of the court, returned a verdict for the company, and this appeal is from the judgment pronounced on that verdict.

The testimony was substantially as follows: On December 30, 1918, the date of the injury, plaintiff was the agent of the company at Searcy, Arkansas, and it was a part of his duty as such to receive and unload tanks of gasoline consigned to the company, and on the date aforesaid there was delivered to him for the company tank car CRBX No. 835, from the Midland Petroleum Company, of Tulsa, Oklahoma, on the railroad tracks for the purpose of having same unloaded and the gasoline therein stored in the company's storage tanks.

Plaintiff, in the course of his employment, proceeded to remove the gasoline from the tank car, and, while in the exercise of due care, and while following the instructions which had previously been given him by the company, he unscrewed the cap at the bottom of the tank car for the purpose of connecting the pipe or hose to convey the gasoline from the tank car to the storage tanks, but when the cap was loosened the gasoline began to escape with such force as to knock plaintiff down, saturating his clothes and person and strangling him to such an extent that he was unable to escape from beneath the car for a period of several minutes, and was thereby so severely burned, that he required the care of a physician for several days, and suffered great pain and agony.

The negligence alleged was that the lower valve in the tank car was not properly set so as to prevent the flow of the gasoline when the cap was removed for the purpose of attaching the hose, and that the valve spring, which forces the valve down into the valve-seat, was worn and not strong enough to properly cause the said valve to seat and thus hold the gasoline in the car and prevent it from pouring out when the cap was taken off, as provided in the rules furnished plaintiff by the company It was the custom, when a car was placed by the carrier for unloading, to open the car by removing the cap from the dome and in this way ascertain if the lever controlling the valve was properly set, and plaintiff did that in the instant case. A rod extended through the car from the bottom to the top, and on the top end of the rod a lever was fastened which worked backward and forward and caused the valve to seat itself in the opening at the bottom of the car. When plaintiff opened the dome of the car in question, he saw that the lever on the rod indicated that the valve on the lower side was properly set. The valve in this car at the bottom did not seat, but the lever at the top in the dome indicated that the valve was properly seated.

The shipment of this car originated at Bristow, Oklahoma, the consignee being the Midland Petroleum Company, of Tulsa, Oklahoma, by which company it was owned and consigned to appellee company. It does not appear from any testimony that appellee company had any knowledge of the condition of the car or any control of its selection, nor was there any testimony that any relation existed between the two companies except that of consignor and consignee.

Appellee company had no agent at Searcy except plaintiff, and he was, therefore, not only the company's representative highest in authority at the time and place of the injury, but he was its sole representative. So that, if any duty devolved upon the company to be performed at Searcy, plaintiff alone could discharge it.

But the negligence complained of did not occur at Searcy. The trouble was caused by filling the car before the valve was properly seated, and that negligent act was committed by the consignor at the point of origin of the shipment.

Plaintiff invokes the doctrine of cases holding the master liable for the defective condition of the tools and appliances which he furnishes for the servant's use, whether these tools belonged to the master or not. But we think that doctrine is not applicable here, as the company made no use of the car except to unload it.

We think there can be no difference in principle between the duty to inspect a tank car and any of the other ordinary cars used in the transportation of the various articles of commerce, such as coal cars, box cars, cattle cars, etc., and it is not ordinarily possible for the consignees of commodities shipped in such cars to make any inspection of them.

In the case of *Dunn v. Boston & N. St. Ry.,* 75 N. E. 75, the employee was injured while unloading a defective car, the injury being occasioned by a defect in the car. The car was being unloaded as other cars had previously been unloaded, but the master had no custom to inspect

the cars before unloading them. In holding there was no liability on the part of the master, the Supreme Judicial Court of Massachusetts said: "To sustain the counts at common law, the plaintiff relies upon the case of *Spaulding* v. *Flynt Granite Co.,* 159 Mass. 587, 34 N. E. 1134. But that case differs widely from the one before us. There a granite company was using a car to carry its granite from its premises to the place of destination. Here the defendant was merely a consignee of coal delivered on its premises by a car of a railroad company. We are not aware of any case where under such circumstances the consignee has been held liable to its servants for a defect in the car; nor are we aware of any case which imposed upon the consignee the duty of inspecting the car."

In the case of *Anderson* v. *Oliver,* 20 Atl. 981, a verdict was directed against an employee who was injured while unloading a car of coal at his employer's furnace, and in affirming that judgment the Supreme Court of Pennsylvania said: "If it was owing to a defective brake, the defendants are not responsible, because they did not own the cars and had no control over them further than to unload them. They belonged to the railroad companies."

An annotated case on the subject is that of *Haskell & Barker Car Co.* v. *Przezdziankowski,* 14 L. R. A. (N. S.) 972. A head note in that case is as follows:

"1. The duty of inspection, owed by a transportation company to its employees, does not apply to a manufacturing company, operating a railroad for transporting materials about its establishment, in a case where one of its employees is hurt by a car owned by another company, and received upon a siding merely to be unloaded."

See, also, *McCullins* v. *Carnegie Co., Ltd.,* 158 Pa. 518, 23 L. R. A. 448; *Rehm* v. *Pa. Ry.,* 30 Atl. 356 (Pa.); 26 Cyc. 1109; *Moynihan* v. *Kings Co.,* 47 N. E. 425.

We conclude, therefore, that no breach of duty on the part of the company was shown, and a verdict in its favor was, therefore, properly directed.

Judgment affirmed.

HUMPHREYS, J., dissents.